WOODARD, SECRETARY OF CORRECTIONS OF
NORTH CAROLINA, ET AL. *v.* HUTCHINS

No. A-557.   Decided January 13, 1984

PER CURIAM.

This matter comes to the Court on the application of the State of North Carolina to vacate an order of a single Circuit Judge of the United States Court of Appeals for the Fourth Circuit, granting, at 12:05 a. m. today, respondent's application for a stay of execution.   Circuit Judge Phillips had jurisdiction to consider respondent's application pursuant to 28 U. S. C. § 1651; accordingly, this Court has jurisdiction to consider the State's application.   A transcript of Judge Phillips' opinion is before the Court.   The application to vacate the stay of execution entered today, January 13, 1984, by Circuit Judge Phillips, was presented to the Chief Justice and by him referred to the Court.

The application to vacate said stay is granted.

*It is so ordered.*

JUSTICE POWELL, joined by THE CHIEF JUSTICE and JUSTICE BLACKMUN, JUSTICE REHNQUIST, and JUSTICE O'CONNOR, concurring.

Unlike JUSTICES WHITE and STEVENS, I do not believe that under the circumstances of this case the District Court was obligated to rule on this successive petition for writ of habeas corpus.

This is another capital case in which a last-minute application for a stay of execution and a new petition for habeas cor-

pus relief have been filed with no explanation as to why the claims were not raised earlier or why they were not all raised in one petition. It is another example of abuse of the writ.[1]

On September 21, 1979, a jury convicted James Hutchins of two counts of first-degree murder and one count of murder in the second degree. He was sentenced to death. It is not denied that he deliberately murdered three policemen. After exhausting his state remedies, on September 24, 1982, Hutchins filed his first petition for federal habeas corpus in the United States District Court for the Western District of North Carolina. This was denied after an evidentiary hearing, and the United States Court of Appeals for the Fourth Circuit affirmed in a full opinion. *Hutchins* v. *Garrison*, 724 F. 2d 1425 (1983). On January 4, 1984, Hutchins filed a petition for certiorari with this Court seeking review of that decision.

Hutchins raised three claims in this habeas petition: (i) that his Sixth Amendment right to effective assistance of counsel had been denied because of a breakdown in communications with his court-appointed counsel; (ii) that the state trial court abused its discretion in denying defense counsel's motion for a continuance; and (iii) that imposition of the death penalty in his case was unconstitutional because the Eighth Amendment prohibits capital punishment of a person who is "mentally or emotionally distressed" at the time of the crime. This Court, after careful consideration, denied certiorari on January 11, 1984. *Post*, p. 1065. That same day Hutchins began anew his quest for postconviction relief, raising claims previously not raised.

After both the North Carolina trial court and the North Carolina Supreme Court denied Hutchins' new claims for postconviction relief, he filed a second petition in District

---

[1] It would have been preferable had the District Court stated expressly that it would not entertain this successive petition because it constituted an abuse of the writ. Nevertheless, it is clear that the petition in this case was an abuse.

Court on January 12, 1984.[2] This raised three new claims: that he had new evidence of his alleged insanity at the time of the crime; that he had evidence that he currently is insane; and that the jury selection process was unconstitutional. Hutchins offers no explanation for having failed to raise these claims in his first petition for habeas corpus, and I see none. Successive petitions for habeas corpus that raise claims deliberately withheld from prior petitions constitute an abuse of the writ.[3]

Title 28 U. S. C. § 2244 makes clear the power of the federal courts to eliminate the unnecessary burden placed on them by successive habeas applications by state prisoners. It provides:

> "(b) When after an evidentiary hearing on the merits . . . [a federal court or federal judge has denied a petition for federal habeas corpus], a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States . . . unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ."

See also 28 U. S. C. § 2254 Rule 9(b).

This case is a clear example of the abuse of the writ that § 2244(b) was intended to eliminate. All three of Hutchins' claims could and should have been raised in his first petition for federal habeas corpus. The new evidence that Hutchins offers to support his claim that he was insane at the time of the crime is the report of a forensic psychiatrist prepared

---

[2] See the *per curiam* opinion of this Court, *ante*, p. 377, vacating the stay entered by Judge Phillips for the procedural posture of the case here.

[3] There is no affirmative evidence that the claims were deliberately withheld. But Hutchins has had counsel through the various phases of this case, and no explanation has been made as to why they were not raised until the very eve of the execution date.

after a January 2, 1984, psychiatric examination. Hutchins, convicted some four years ago, and frequently before courts during the intervening years, does not explain why this examination was not conducted earlier.[4] He does not claim that his alleged insanity is a recent development. In light of his claim that he also was insane at the time of the crime, such an assertion would be implausible. Finally, Hutchins does not explain why he failed to include his challenge to the jury selection in his prior habeas petition.

A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward—often in a piecemeal fashion—only after the execution date is set or becomes imminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.

JUSTICE REHNQUIST, with whom JUSTICE O'CONNOR joins, concurring.

Unlike our Brothers WHITE and STEVENS, we believe that the District Court is not obligated to rule on every 11th-hour petition for habeas corpus before it denies a stay. But assuming that the merits of the *Witherspoon* aspect of Judge Phillips' order granting the stay are necessarily before us, we find that nothing in the material presented by respondent would show that the particular jurors who sat in his case were "less than neutral with respect to *guilt*." *Witherspoon v. Illinois*, 391 U. S. 510, 520, n. 18 (1968). Absent such a showing, there can be no claim that respondent was denied this aspect of his right to a fair and impartial jury under the Sixth and Fourteenth Amendments, or that he would be subject to cruel and unusual punishment under the Eighth and Fourteenth Amendments.

---

[4] Hutchins' case has been reviewed by at least seven courts, including this Court, and more than 25 judges.

JUSTICE BRENNAN, dissenting.

I find the Court's decision to vacate the stay of execution in this case simply incomprehensible. The stay was granted early this morning, at 12:05, by Judge James Dickson Phillips of the United States Court of Appeals for the Fourth Circuit. Judge Phillips correctly decided that a stay was necessary in order to preserve a substantial issue raised by the condemned prisoner, James Hutchins. That issue—whether the exclusion for cause of potential jurors unequivocally opposed to the death penalty resulted in a biased jury during the guilt phase of the trial proceedings against Hutchins—is currently the subject of a conflict between judges of the District Court for the Western District of North Carolina and remains undecided by this Court.

As the Court recognizes, Judge Phillips had jurisdiction over this case.* Late yesterday, Hutchins filed a petition for a writ of habeas corpus and an application for a stay of execution in the court of District Judge Woodrow W. Jones. Chief Judge Jones, however, acted only to deny the application, leaving in limbo Hutchins' petition for habeas corpus. After taking this action, Chief Judge Jones apparently went home. As a result, when Hutchins approached Judge Phillips for relief, Judge Phillips was faced with an application to stay the execution scheduled to take place within a matter of hours, appended to which was a copy of Hutchins' petition for habeas corpus that had been left undecided by the District Court.

---

*As JUSTICE MARSHALL points out, the Court's zealous efforts to re-impose Hutchins' execution at the last minute may therefore be futile. North Carolina's death penalty statute requires that a new date of execution be set once a stay of execution, *issued by a court of competent jurisdiction,* is terminated. N. C. Gen. Stat. § 15–194 (1983). As we have noted, the Court holds that Judge Phillips had jurisdiction to issue his stay. It thus appears that the North Carolina statute is applicable and will require that Hutchins' execution be postponed.

Judge Phillips, knowing that a petition for a writ of habeas corpus was then pending in the District Court, and would not be decided before Hutchins' execution, correctly issued the stay to preserve the issue noted above. As JUSTICE WHITE and JUSTICE STEVENS note, the stay was properly issued to allow the District Court to act on the habeas petition. In addition, under 28 U. S. C. § 2241, it was appropriate for Judge Phillips to treat the papers filed with him as an independent petition for a writ of habeas corpus, refer that petition to the District Court, and grant a stay under 28 U. S. C. § 2251 pending decision by the District Court. See also All Writs Act, 28 U. S. C. § 1651.

Despite its holding that Judge Phillips had jurisdiction to issue the stay, the Court has inexplicably concluded that Judge Phillips improperly exercised that jurisdiction. A stay issued by a lower court, however, should be vacated only upon a showing that issuance of the stay was an abuse of discretion. Far from being an abuse of discretion, the action of Judge Phillips was eminently reasonable and correct. Not only is there at least one other federal judge in Judge Phillips' own Circuit who has ruled favorably on the merits of this question, see *Keeten* v. *Garrison,* 578 F. Supp. 1164 (WDNC 1984), and at least one District Court in Arkansas that has reached a similar conclusion, see *Grigsby* v. *Mabry,* 569 F. Supp. 1273 (ED Ark. 1983), appeal pending, No. 83–2113 (CA8, filed Aug. 8, 1983), but also this Court itself has recognized the potential validity of the claim. See, *e. g.,* *Witherspoon* v. *Illinois,* 391 U. S. 510, 516–518 (1968); *Bumper* v. *North Carolina,* 391 U. S. 543, 545, and nn. 5, 6 (1968). See also Winick, Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and a Constitutional Analysis, 81 Mich. L. Rev. 1 (1982).

Finally, the State argues that Hutchins should pursue state-court remedies in light of yesterday's *Keeten* decision. While this obviously is not the basis of the Court's vacation of the stay, this in any event is a literal impossibility given the 6 p. m.

deadline for execution. Indeed, in light of the constraints imposed on our deliberations by that deadline, the most disturbing aspect of the Court's decision is its indefensible—and unexplained—rush to judgment. When a life is at stake, the process that produces this result is surely insensitive, if not ghoulish.

I dissent.

JUSTICE WHITE and JUSTICE STEVENS, dissenting.

We would not vacate the stay because the District Court did not pass on the merits of the habeas corpus petition and the stay was entered by a Court of Appeals Judge until the District Court performs its duty and acts on the habeas petition. Until the merits of the petition are addressed below or it is there held that there has been abuse of the writ, we would leave the stay in effect. That is the orderly procedure it seems to us. It also seems to us that the Court's opaque *per curiam* opinion vacating the stay comes very close to a holding that a second petition for habeas corpus should be considered as an abuse of the writ and for that reason need not be otherwise addressed on the merits. We are not now prepared to accept such a *per se* rule.

JUSTICE MARSHALL, dissenting.

At 12:05 a. m. today, Judge James Dickson Phillips of the United States Court of Appeals for the Fourth Circuit granted respondent Hutchins' application for a stay of execution. Less than an hour after the stay was issued, attorneys from the North Carolina Attorney General's Office filed in this Court a 3½-page, handwritten application to vacate Judge Phillips' stay. Without taking time to consider the basis of Judge Phillips' stay—indeed without waiting to receive the final draft of Judge Phillips' memorandum opinion—the Court has granted the application, apparently so that North Carolina can proceed with Hutchins' execution before his death warrant expires at 6 o'clock this evening. Given the posture

384

of this application and the dire consequences of error, I find the Court's haste outrageous.

Without any explanation, the Court takes the position that Judge Phillips somehow erred in granting a stay of Hutchins' execution.[1]  As JUSTICE BRENNAN has shown, *ante*, at 382, Judge Phillips' decision to grant the stay was a prudent exercise of authority taken by a federal judge under serious time constraints and dealing with considerable uncertainty. What is incredible about this Court's decision is that five Members of the Court have voted to vacate Judge Phillips' stay without even reading his opinion[2] or fully considering respondent's defense of the stay.  Indeed, at the present time, the Court does not even have before it a full record of the case.[3]  In all candor, if there is abuse of federal power in this matter, it is to be found in our own Chambers.

Ironically, the Court's zealous efforts to authorize Hutchins' execution at the last minute may be futile.  The North Carolina death penalty statute apparently requires that a new date of execution must be set whenever a stay of execution is issued and then vacated.[4]  N. C. Gen. Stat. § 15–194

---

[1] Much of the State's application involves a challenge to Judge Phillips' jurisdiction and an argument that Hutchins is procedurally barred from raising his juror-bias claim in federal court.  The majority apparently agrees with respondent that these threshold claims are insubstantial.

[2] Early this morning, the Court received over the telephone a short summary of Judge Phillips' decision, which the Clerk's Office transcribed. That brief, preliminary draft concluded with the statement, "I will say roughly the foregoing in a very short memorandum opinion that I will file tomorrow."

[3] In addition to the State's handwritten application, the Court has received over the course of the day Hutchins' response to the State's application and supplemental handwritten papers from both parties.  Although respondent has filed various briefs that he presented to other courts in this litigation, neither party has filed a complete transcript of the trial court *voir dire,* at which the deprivation of Hutchins' constitutional rights allegedly took place.

[4] The relevant statute reads: "Whenever . . . a stay of execution granted by any competent judicial tribunal . . . has expired or been terminated, . . . *a hearing shall be held* in a superior court . . . to fix a new date for the

(1983). Since Judge Phillips indisputably issued a stay of execution and the Court now vacates the stay, North Carolina law would seem to require that a new date of execution now be set.[5] Of course, the meaning of this provision is a question of North Carolina law, and is therefore to be decided by North Carolina courts. I trust, however, that the responsible North Carolina officials will consider whether Hutchins has a valid claim under this provision before the State proceeds with Hutchins' execution.

I dissent.

---

execution of the original sentence. . . . The judge shall set the date of execution for not less than 60 days nor more than 90 days from the date of the hearing." N. C. Gen. Stat. § 15–194 (1983) (emphasis added). The majority's *per curiam* clearly concludes that Judge Phillips was a competent judicial tribunal with jurisdiction to issue a stay. See n. 1, *supra*.

[5] Common decency demands such a postponement, especially since, under North Carolina law, Hutchins must already have been notified of his reprieve by Judge Phillips. See N. C. Gen. Stat. § 15–193 (1983).