MARCH 5, 1985

No. 84–6325 (A–666).   WITT v. WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.   C. A. 11th Cir. Application for stay of execution of sentence of death, presented to JUSTICE REHNQUIST, and by him referred to the Court, denied. Certiorari denied.   JUSTICE STEVENS would grant the application.   JUSTICE POWELL took no part in the consideration or decision of this application and this petition.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant Witt's application for a stay of execution.   But even if I thought otherwise, I would stay this execution because Witt's petition raises an issue—crucial to the administration of capital punishment in this country—on which there exists a split of authority among the Courts of Appeals.   This Court is certain to grant certiorari in the immediate future to resolve this issue, and our resolution will govern the question whether Witt's death sentence is constitutional. Under these circumstances, a denial of Witt's application for a stay is manifestly unjust.

## I

Witt was convicted of murder and sentenced to death. After exhausting Florida's postconviction remedies, he sought federal habeas corpus relief. The United States Court of Appeals for the Eleventh Circuit upheld Witt's conviction but reversed his sentence on the basis of *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968). *Witt* v. *Wainwright,* 714 F. 2d 1069 (1983). This Court reversed and remanded. *Wainwright* v. *Witt,* 469 U. S. 412 (1985). A second federal habeas petition was filed in Federal District Court on February 26, 1985, while Witt was simultaneously exhausting state remedies. On March 1, 1985, the District Court denied habeas relief and an application for stay of execution pending appeal. On March 4, the Court of Appeals affirmed the denial of habeas relief and denied an application for a stay of execution pending disposition of a petition for certiorari to this Court. On the same day Witt petitioned this Court for certiorari and applied for a stay of execution pending disposition of that petition. Barring a stay by this Court, Witt will be executed at 7 a. m. on March 6, 1985.

Witt alleges that his Sixth and Fourteenth Amendment rights were violated when the State submitted the general venire to a process of "death-qualification." The crux of Witt's argument is that the currently permissible, but constitutionally circumscribed, *voir dire* process in capital cases of excluding jurors opposed to the death penalty, see *Wainwright* v. *Witt, supra,* has the unconstitutional effect of rendering juries more predisposed to find a defendant guilty than would a jury from which those opposed to the death penalty had not been excused. This argument implicates both the right to an impartial jury and the right to a jury from which an identifiable segment of the community has not been excluded. See, *e. g., Taylor* v. *Louisiana,* 419 U. S. 522, 538 (1975).

*Witherspoon* explicitly left open the question that Witt raises. The Court declined to address the question primarily because the empirical data then available were too fragmentary to permit conclusive resolution of the question whether "death-qualified" juries are unconstitutionally prone to convict. We made quite clear, however, that a sufficient empirical showing to that effect would raise grave constitutional questions:

> "[T]he question would then arise whether the State's interest in submitting the penalty issue to a jury capable of imposing capital punishment may be vindicated at the expense of the

defendant's interest in a completely fair determination of guilt or innocence—given the possibility of accommodating both interests by means of a bifurcated trial, using one jury to decide guilt and another to fix punishment." 391 U. S., at 520, n. 18.

See also *Bumper* v. *North Carolina*, 391 U. S. 543, 545 (1968). Our recent decision in *Wainwright* v. *Witt, supra,* in no way forecloses this issue, and may have made its immediate resolution imperative. See *id.,* at 460, n. 11 (BRENNAN, J., dissenting).

The District Court in this case ruled on the merits of Witt's claim and rejected the argument that the "death-qualified" jury is unconstitutionally prone to convict. Tr. 17. In doing so, the court followed a recent en banc ruling of the the Eleventh Circuit rejecting the identical claim. See *McCleskey* v. *Kemp*, 753 F. 2d 877 (1985). To support rejection of the claim the Eleventh Circuit in *McCleskey* specifically relied on *Spinkellink* v. *Wainwright*, 578 F. 2d 582, 583–596 (CA5 1978), cert. denied, 440 U. S. 976 (1979). In *Spinkellink*, the Fifth Circuit had held that, irrespective of empirical data showing that "death-qualified" juries are biased in favor of the prosecution, the process of "death-qualification" of capital jurors violates no constitutional rights of a capital defendant because the proposition that "a death-qualified jury is more likely to convict than a nondeath-qualified jury does not demonstrate *which* jury is impartial. It indicates only that a death-qualified jury might favor the prosecution and that a nondeath-qualified jury might favor the defendant." 578 F. 2d, at 593–594 (emphasis added). The Fourth Circuit has in recent months also relied on the Fifth Circuit's analysis in *Spinkellink* to reject a challenge identical to the one presented in this case. See *Keeten* v. *Garrison*, 742 F. 2d 129 (1984).

A recent en banc decision of the Eighth Circuit directly conflicts with this established Fourth, Fifth, and Eleventh Circuit law. See *Grigsby* v. *Mabry*, 758 F. 2d 226 (1985). After carefully scrutinizing a large body of empirical evidence on which the District Court had relied in making the factual finding that "death-qualified" juries are more prone to convict, the Eighth Circuit ruled that a conviction rendered by such a jury violates the capital defendant's Sixth and Fourteenth Amendment rights to an impartial jury. *Id.,* at 241–242 ("The issue is not whether a jury would be biased one way or the other, but whether an impartial jury

can exist when a distinct group in the community is excluded by systematically challenging them for cause"). In reaching this conclusion, the Eighth Circuit acknowledged and explained its rejection of the analysis that led the Fifth Circuit in *Spinkellink*, the Fourth Circuit in *Keeten*, and the Eleventh Circuit in *McCleskey* to a contrary result. *Grigsby* v. *Mabry*, *supra*, at 238–242.

This Court will certainly grant certiorari to resolve this issue in the immediate future because it presents a clear split in the Courts of Appeals on an issue of constitutional law whose importance to the administration of the States' criminal justice systems is undoubted. In light of the certainty that this Court will soon address the issue and the uncertainty as to its proper resolution, the State of Florida's effort to execute Witt should be stayed pending our disposition of the issue.

## II

Despite the overwhelming public importance of this issue, the State of Florida, raising a procedural barrier to Witt's claim, would allow Witt to die with the issue still hanging in the balance. The State argues that Witt should not be allowed to have the issue aired because he did not present it in an earlier federal habeas petition; on the basis of this argument, the Eleventh Circuit closed its doors to Witt's substantial constitutional claim. Abuse of the writ was found because in Witt's first federal habeas petition, filed on May 5, 1980, he did not raise his death-qualified jury claim—a claim accepted for the first time by any court on August 5, 1983. See *Grigsby* v. *Mabry*, 569 F. Supp. 1273 (ED Ark 1983), aff'd, 758 F. 2d 226 (CA8 1985) (en banc). Witt's claim raises questions going to the heart of the jury system by which he was convicted, and to bar him from raising it merely because his counsel either did not know of the claim in 1980 or recognized the futility of raising it at that time would cast serious doubt on the willingness of this Court to ensure that executions are carried out in compliance with the Constitution.

This Court has had little occasion to address the abuse-of-the-writ principles now codified in 28 U. S. C. § 2244(b) and in 28 U. S. C. § 2254 Rule 9. In 1948, shortly before § 2244(b) was passed, the Court in *Price* v. *Johnston*, 334 U. S. 266, 291 (1948), overturned a District Court's dismissal without a hearing of a fourth habeas petition that presented issues not previously adjudicated. Discussing general equitable principles governing issuance of the

writ, the Court noted that "[t]he primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned," and that the mere fact that petitioner had filed three previous petitions was no reason to refuse to reach the merits of his claim. In *Sanders* v. *United States*, 373 U. S. 1 (1963), the Court undertook its only full explication of abuse-of-the-writ principles. Citing the deliberate bypass standard of *Fay* v. *Noia*, 372 U. S. 391 (1963), the Court in *Sanders* emphasized that previously unadjudicated claims must be decided on the merits unless the petitioner has made a conscious decision deliberately to withhold them, is pursuing "needless piecemeal litigation," or the claims are raised only to "vex, harass, or delay." 373 U. S., at 18. To illustrate the proper application of this principle, the Court discussed *Wong Doo* v. *United States*, 265 U. S. 239 (1924), in which the petitioner had raised two claims in a first petition but offered no evidence on one of those claims. An attempt to reassert that claim in a second petition was held an abuse of the writ, for the petitioner was found to have deliberately abandoned the claim in the earlier proceeding.

Other than these isolated instances, the Court has had little occasion in full opinions to elaborate upon the contours of the abuse-of-the-writ doctrine. Instead, the doctrine develops *sub rosa* when this Court refuses to stay executions or to consider substantive claims raised in certiorari petitions that arise from second or later habeas petitions. That alone should be reason to pause before declining, without plenary consideration, to reach the merits of the major issue in current death-penalty law that this stay application and certiorari petition raise; lower courts, as well as the public, are entitled to guidance as to what standards this Court is employing when it refuses to reach the merits of what are clearly substantial issues in the administration of the death penalty. Surely the mere fact that this is a second habeas petition is not in and of itself enough to bar consideration of the merits of Witt's claim. See *Woodard* v. *Hutchins*, 464 U. S. 377, 383 (1984) (WHITE and STEVENS, JJ., dissenting).

Moreover, while the Court has abandoned *Fay*'s deliberate bypass standard in some contexts and required petitioners to show cause and prejudice for their delay in presenting issues, see *Wainwright* v. *Sykes*, 433 U. S. 72 (1977), it is clear that the deliberate bypass standard of *Sanders* still governs dismissal of successive

habeas petitions. First, in enacting Rule 9(b), Congress explicitly adopted the abuse-of-the-writ standard announced in *Sanders*. See *Rose* v. *Lundy*, 455 U. S. 509, 521 (1982). Second, Congress explicitly rejected a "cause and prejudice" test in this context; although a proposed draft of the Rule would have allowed dismissal when the failure to raise a claim earlier was "not excusable," see H. R. Rep. No. 94–1471, p. 8 (1976), Congress amended the proposed Rule for fear that "the 'not excusable' language created a new and undefined standard *that gave a judge too broad a discretion to dismiss a second or successive petition.*" *Id.,* at 5 (emphasis added). Instead, a less stringent standard—that of *Sanders*—was adopted. Under that standard, dismissal is allowed only when a second petition "constitute[s] an abuse of the writ." *Id.,* at 5, 8.

Thus, a successive petitioner is not required to demonstrate that he was *unable* to raise the claim earlier. Instead, the petitioner need show only that the claim was not deliberately withheld for the purpose of abusing the process in some way. Witt cannot be accused of such abuse. First, unlike *Wong Doo*, Witt did not present this claim in his first petition and then abandon it. See also *Antone* v. *Dugger*, 465 U. S. 200 (1984). Second, Witt can hardly be said to be engaging in *"needless* piecemeal litigation," *Sanders, supra,* at 18 (emphasis added); his only failing was to raise his claim at a time when it was clear that it was foreclosed in Florida, see, *e. g., Riley* v. *State*, 366 So. 2d 19 (Fla. 1978), and in the Eleventh Circuit, see *Spinkellink* v. *Wainwright*, 578 F. 2d 582 (CA5 1978), cert. denied, 440 U. S. 976 (1979), and when this Court had refused to entertain the claim many times. Were the rule otherwise, as it seems to be becoming, defense counsel in every criminal case would have to include in a first federal habeas petition a laundry list of potentially meritorious but clearly rejected constitutional claims in order to preserve them should the law later change. Rather than promoting efficiency, such a rule would further clog the courts and confound lower court judges. Third, Witt's petition is not one "whose only purpose is to vex, harass, or delay." 373 U. S., at 18. Witt has raised a substantial claim going to the validity of his conviction. Finally, it is clear that, were this Court upon plenary consideration to invalidate death-qualified juries, such a holding would constitute an intervening change in law sufficient to allow Witt then to have his claim adjudicated on the merits. Surely Witt's fate should not

rest on the fortuity of his execution having been scheduled before, rather than after, this Court's consideration of the Eighth Circuit's decision.

Perhaps of even greater importance, *Sanders* left no doubt that a claim raised for the first time in a second or later habeas petition could be considered if "the ends of justice" would thereby be served. See *id.*, at 17. "Even as to [a successive] application, the federal judge clearly has the power—and, if the ends of justice demand, the duty—to reach the merits." *Id.*, at 18–19. Yet I fail to see how this standard can be applied in any meaningful way before we address the merits of the underlying death-qualified juror claim that the Court must soon face. Witt's claim strikes at the heart of every premise upon which the legitimacy of his conviction rests. A great deal of empirical work has been devoted to exploring this claim, and the evidence supporting it is strong enough to have convinced the en banc Eighth Circuit, and two District Courts, that the claim is sound. Until we have the issue before us for plenary consideration, examine the underlying evidence, and reach some decision on both the merits of the claim and the nature and scope of any constitutional defect that might exist, I simply cannot understand how the "ends of justice" test can be applied to determine whether Witt's claim should be procedurally barred. "The availability of habeas corpus relief should depend primarily on the character of the alleged constitutional violation and not on the procedural history underlying the claim." *Rose* v. *Lundy, supra,* at 547–548 (STEVENS, J., dissenting). To apply the procedural bar in advance of full consideration of this central issue is to turn the Great Writ on its head.

## III

Witt will not be the first person whose execution this Court has sanctioned notwithstanding a claim that his conviction by a "death-qualified" jury violated the Sixth and Fourteenth Amendments. See, *e. g., Knighton* v. *Maggio,* 468 U. S. 1229 (1984) (BRENNAN, J., dissenting); *Woodard* v. *Hutchins, supra,* at 382 (BRENNAN, J., dissenting). Nor will he be the first person whose execution this Court has sanctioned "while the constitutionality of his sentence is in doubt." See, *e. g., Stephens* v. *Kemp,* 469 U. S. 1098, 1099 (1984) (BRENNAN, J., dissenting); *Green* v. *Zant,* 469 U. S. 1143, 1144 (1985) (BRENNAN, J., dissenting). The responsibility to decide profoundly difficult and divisive legal questions is not

a comfortable one. All too often, judges seek to avoid this responsibility by hiding behind unexplained and unexplainable procedural "rules" that purport to allow cases to be disposed of without confronting their merits. Every Member of this Court knows that certiorari must be granted in the immediate future to resolve the issue that Witt has raised in his petition for certiorari. Our refusal to grant his stay application pending resolution of the issue unmasks the hollowness of this Court's purported commitment to unique procedural safeguards against arbitrariness "'on a matter so grave as the determination of whether a human life should be taken or spared.'" *Zant* v. *Stephens*, 462 U. S. 862, 874 (1983) (quoting *Gregg* v. *Georgia*, 428 U. S. 153, 189 (1976)); see also *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978) (BURGER, C. J.).

I dissent.