**Son H. FLEMING, Petitioner,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. 86–50–VAL.**

United States District Court,
M.D. Georgia,
Valdosta Division.

June 25, 1986.

---

**12.** The court does not address the non-Texas state cases cited by Pesch. The court is clearly not *Erie*-bound to follow them.

Kenneth A. Shapiro, Atlanta, Ga., for petitioner.

Mary Beth Westmoreland, Atlanta, Ga., for respondent.

OWENS, Chief Judge:

Petitioner Son H. Fleming was convicted on January 26, 1977, and sentenced to death for the murder of Edward Giddens, the police chief of Ray City, Georgia. He is scheduled to be executed on June 27, 1986, at 7:00 p.m. The Eleventh Circuit summarized the circumstances surrounding the brutal murder of Chief Giddens as follows:

The murder of James Edward Giddens took place between 10:30 and 11:00 p.m. on February 11, 1976 near Lakeland, Lanier County, Georgia. It was the last of a series of crimes committed that night by petitioner, Son H. Fleming, and his accomplices, Henry Willis III and Larry Donnell Fleming (petitioner's nephew), in south central Georgia. On the afternoon of February 11, petitioner, in Moultrie, Georgia, borrowed a red and white Ford car from Terry Coney, a friend. At about 8:00 p.m., petitioner left Moultrie in the car with Larry Donnell Fleming and Henry Willis III as passengers.

The three men robbed a convenience store that evening between 10:00 and 10:30 in Adel, Georgia. Larry Fleming and Willis, one of them armed with a .22 caliber revolver, went into the store while petitioner remained in the car. They accosted the manager, rifled the cash register, and fled with a brown paper bag of money and a carton of Kool cigarettes.

James Edward Giddens, the police chief of Ray City, was sitting in his police car in Ray City talking with a friend, L.V. Dupree, when he received a broadcast over his police radio about the robbery. Shortly thereafter, the red and white Ford passed through Ray City. The car appeared to have two occupants, but, in fact, there was a third who was hidden from view. One of the occupants wore a baseball cap. Chief Giddens pursued the car to investigate. Moments later, he radioed the police dispatcher that he was stopping the car and gave a conclusive description of it, including the license number. Once both cars were stopped, petitioner, the driver of the Ford, got out to speak with Chief Giddens. One of the other men with petitioner jumped Giddens and all three men struggled for his service revolver. After significant difficulty, they subdued Giddens and, at gunpoint, placed him in the Ford. Petitioner then proceeded to drive the car over some isolated country roads.

During the trip, Chief Giddens begged them to spare his life, telling them that he would never report the incident, that he had a wife and three small children, and that he was scheduled to retire from the police force the next day. Petitioner stopped the car near a swamp and everyone got out. Chief Giddens ran into the swamp, whereupon petitioner shot at him three times with Giddens' .38 caliber revolver. One of the bullets went through the chief's body, crippling him. Giddens struggled to escape. Petitioner gave Giddens' revolver to one of the others. The two younger men, now armed with Giddens' revolver and the .22 caliber pistol used in the robbery, hunted down the chief and pumped his body full of bullets from close range.

Twenty minutes after Chief Giddens radioed that he was stopping the red and white Ford, L.V. Dupree found his patrol car along the highway, where petitioner and his accomplices had left it, and used the car's police radio to report the incident to the police radio dispatcher. The police immediately broadcast an alert for the Ford, and two hours later, at 12:30 in the morning of February 12, two Brooks County deputy sheriffs stopped the Ford near Barney, Georgia. The Ford appeared to have two occupants: petitioner, wearing a baseball cap, behind the steering wheel, and a black male passenger in the right front seat. The deputies drew their weapons and ordered the two men to get out of the car. Petitioner and Willis, the passenger, complied and were placed under arrest. One of the deputies then searched the Ford and discovered Larry Fleming hiding by the front seat, under the dashboard. The deputy also discovered Chief Giddens' revolver, a .22 caliber pistol loaded with ratshot, a brown paper bag of money and a carton of Kool cigarettes.

The next day, the police found Chief Giddens' bullet-riddled body face down in the swamp about 100 feet from county road 122, between Lakeland and Hihira

[sic]. An autopsy revealed that he had been shot several times in the face with ratshot at a range of less than fifteen inches. He had also been shot five times with his own revolver. Chief Giddens had somehow survived all of these gunshot wounds; he died from drowning.

*Fleming v. Kemp*, 748 F.2d 1435, 1437–38 (11th Cir.1984) (footnotes omitted).

### History of the Case

The procedural history of this case prior to the Eleventh Circuit's decision is well set forth in their opinion. *See Fleming*, 748 F.2d at 1436 and n. 1. After the Eleventh Circuit affirmed this court's denial of habeas relief and denied rehearing en banc, *Fleming v. Kemp*, 765 F.2d 1123 (11th Cir.1985), Fleming petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court denied the petition. *Fleming v. Kemp*, —— U.S. ——, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986).

Last week petitioner filed his second round of habeas corpus petitions in the Georgia state courts. The Superior Court of Butts County, Georgia, dismissed his petition on June 20, 1986, and the Georgia Supreme Court denied his application for a certificate of probable cause to appeal on Monday (June 23, 1986). Fleming next filed his second federal habeas petition, which is now in a posture for decision by the court.

### Issues

Petitioner raises five grounds for relief: (1) that the prosecutor exercised his peremptory strikes in a racially discriminatory manner; (2) that his sentence was based upon statements obtained during questioning after he requested the advice of counsel; (3) that he was denied assistance of counsel at his committal hearing; (4) that the prosecutor made an improper closing argument during the sentencing trial; and (5) that Georgia's capital sentencing process is arbitrary and discriminatory. Petition for writ of habeas corpus at 5–7.

### Abuse of the Writ

The State asks the court to dismiss this second petition on the ground that it is an abuse of the writ. Rule 9(b) of the Rules Governing Section 2254 Cases provides:

**Successive petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b), 28 U.S.C.A. foll. § 2254 (West 1977). This rule codifies the judicially developed doctrine of abuse of the writ set forth in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Raulerson v. Wainwright*, 753 F.2d 869, 873 (11th Cir.1985); *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir.1983). There are two types of successive writs: those that fail to allege new and different grounds for relief and those that do allege new and different grounds for relief.

The State argues that the present petition is an abuse of the writ because claims three, four, and five were raised and adjudicated in the prior federal habeas case and claims one and two were not raised but should have been. The prior federal habeas petition raised thirty-six grounds for relief. A review of the record shows that claims two, three, four, and five were in fact raised in the first petition. *See* Application for habeas corpus filed October 5, 1981, at grounds one (denial of assistance of counsel), seven and ten (prosecutorial argument), eleven (use of statements at trial), and twenty-five (Georgia's death penalty is arbitrary and capricious). Although this court did not discuss in detail all petitioner's claims in the first federal habeas opinion, the court wrote that it had considered all his contentions and found them to be without any possible merit. *Fleming*, 560 F.Supp. at 542.

■ Counsel for petitioner stated that he assumed the first claim (concerning peremptory strikes) had been raised in ground thirty-two of the first federal habeas petition. Ground thirty-two states:

FF. Ground Thirty-two: Petitioner was indicted, convicted and sentenced by grand and traverse juries from which blacks and young persons were systematically excluded, in violation of the United States Constitution.

Supporting Facts: The grand and traverse juries were drawn from pools from which blacks and young persons were systematically excluded.

The first claim presented in the second federal habeas is as follows:

I. Petitioner was convicted and sentenced to death in violation of the Sixth and Fourteenth Amendments because the prosecutor exercised his peremptory strikes at the guilt-innocence trial of petitioner, a black man, in a racially discriminatory manner so as to intentionally exclude otherwise qualified blacks from the jury solely on the basis of their race.

In this court's judgment, ground thirty-two in the first federal petition and claim I in the second federal petition are not the same and, therefore, claim I is a new and different ground for relief.

■ Once the State asserts an abuse of the writ defense, the burden is on the petitioner to rebut the State's contention. *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir.1985); *Potts v. Zant*, 638 F.2d 727, 747 (5th Cir.1981) (Unit B). The court held a hearing yesterday on the issue of abuse to give the petitioner a full opportunity to respond to the State's abuse of the writ arguments.

As determined above, claim I is a new and different ground for relief. The Supreme Court's opinion of such new grounds was stated in *Woodard v. Hutchins*, 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984):

A pattern seems to be developing in capital cases of multiple review in which

claims that could have been presented years ago are brought forward—often in a piecemeal fashion—only after the execution date is set or becomes imminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.

Petitioner has the burden of demonstrating that "the failure to present the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." *Witt,* 755 F.2d at 1397. *See also Moore v. Zant,* 734 F.2d 585, 590 (11th Cir.1984). The State contends that the inclusion of claim I is an abuse of the writ because it was intentionally abandoned prior to the first federal habeas. The court's consideration of claim I should therefore focus on this contention.

■ As stated earlier, grounds two through five raised in the present petition were previously addressed in the first federal habeas corpus proceeding. Therefore,

> controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted). No party disputes that the first federal habeas was adjudicated adversely to the petitioner or that the prior determination was on the merits. Therefore, the only question before the court as to grounds two through five is whether the ends of justice would be served by reaching the merits.

> In determining whether the "ends of justice" would be served by readdressing the merits of the same contention as raised in the prior petition, [the court] must look at objective factors, such as whether this was a full and fair hearing with respect to the first petition and

whether there has been an intervening change in the law.

*Smith v. Kemp,* 715 F.2d 1459, 1468 (11th Cir.1983). Another factor is whether there was an intervening change in the facts of the case. *Witt,* 755 F.2d at 1397. Other factors might likewise be relevant in a determination of the ends of justice. *Potts,* 638 F.2d at 740. The court has also kept in mind that the abuse of the writ doctrine is governed by equitable principles and that the doctrine "is of rare and extraordinary application." *Moore,* 734 F.2d at 590–91 (citations omitted).

### Claim I—Peremptory Strikes

■ Petitioner contends that the prosecutor exercised his peremptory strikes at the guilt-innocence trial in a racially discriminatory manner. Petitioner raised this claim in his first state habeas petition. *See Fleming v. Austin,* No. 80–41 at count 28. However, he abandoned the claim before proceeding into federal court. Petitioner was obviously aware of the claim since he had raised it in state court. His counsel has responded by stating that he did not prepare the first federal habeas application, but he had "assumed" that the claim was raised in ground thirty-two. As discussed above, ground thirty-two is a different claim than claim I in the present petition. Petitioner has thus failed to show—as he has the burden to do—that the peremptory challenge claim was not intentionally abandoned. Inclusion of claim I is therefore an abuse of the writ and claim I is accordingly dismissed.

Out of an abundance of caution, this court has also reviewed claim I under the "ends of justice" standard in case the appellate court were to find that claim I was raised in the first federal petition.

■ Petitioner contends that the ends of justice standard is satisfied because there has been a change in the law set forth in *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court in *Batson* overruled the portion of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 284, 13 L.Ed.2d 759 (1965), "concerning the

evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the State's use of peremptory challenges to exclude members of his race from the petit jury." *Id.*, 106 S.Ct. at 1714 (footnote omitted). The Court held that

> a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, *the defendant first must show* that he is a member of a cognizable racial group and *that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.*

*Id.* at 1722–23 (citation omitted) (emphasis added).

The prosecutor in *Batson* used his peremptory challenges to strike all four black persons on the venire, causing the jury to be composed only of white persons. *Id.* at 1715. By contrast, in the present case the prosecutor (Vickers Neugent) exercised his peremptory challenges to strike only eight out of the ten black prospective jurors. He used his other two peremptory strikes to exclude white persons from the jury. Petition for writ of habeas corpus at exhibit A attached to exhibit D (affidavit of Michael Russell) and at exhibit E (transcript of jury selection at trial). The prosecutor could have excluded the other two jurors if he had wished to do so. One of the black jurors was stricken by defense counsel, resulting in a jury of eleven whites and one black.

*Batson* does not apply to the situation in the present case, because the prosecutor did not strike all the black jurors even though he could have done so. The question of whether there has been a change in the law is pretermitted by the inapplicability of *Batson.* A petitioner cannot successfully claim that an alleged change in the law in an area inapplicable to his case is reason to allow a successive habeas petition to be considered on the merits.

■ Even if *Batson* does apply to Fleming's petition, there has been no change in the law because the *Batson* rule is prospective only. The *Batson* plurality opinion unfortunately did not intimate whether or not the decision is retroactive. However, concurring opinions by Justices White and O'Connor, and the dissenting opinion by the Chief Justice make clear that the *Batson* rule should be prospective only. *See id.* at 1726 (White, J.), 1731 (O'Connor, J.), and 1741–42 (Burger, C.J.). The Chief Justice concluded that "it is impossible to construct even a colorable argument for retroactive application." *Id.* at 1742.

### Claim II—Admission of Statements

■ Petitioner next claims that his death penalty sentence is unconstitutional because the trial judge admitted into evidence statements obtained in police-initiated interrogations after formal charges were lodged against Fleming and after he requested assistance of counsel. As explained earlier, this claim must be reviewed under the ends of justice standard. Petitioner claims that the recent Supreme Court case *Michigan v. Jackson,* — U.S. —, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), is a change in the law satisfying the ends of justice requirement.

The Court held in *Jackson* that under the sixth amendment, *once a criminal defendant requests counsel at arraignment,* a waiver of sixth amendment rights made without counsel is invalid, and the fruits of any subsequent police-initiated interrogations must be suppressed. *Id.* at 1406. As in claim I of the present habeas petition, the question of whether *Jackson* is a change in the law is pretermitted by the inapplicability of the recently announced rule to the present case.

The record shows that prior to making the statements in question, petitioner was taken before two judicial officers on two occasions—February 12 and 16—and advised of his right to counsel. *Fleming,* 560 F.Supp. at 529. On the second occasion he said his mother was going to get him a

lawyer. *Id.* (In fact, Benjamin Zeesman was later retained as his counsel.)

Petitioner neither "asserted" his right to counsel nor requested counsel at any time prior to making the questioned statements. Subsequently, on February 24, 1976, petitioner did assert his right to counsel by making a request for counsel to be appointed "to serve until he could employ his own." *Id.* at 529. The state court promptly appointed Edward Parrish to represent him. The facts of petitioner's case are thus far different than those in *Jackson.*

### Claim III—Denial of Assistance of Counsel

■ Third, petitioner claims that he was unconstitutionally convicted and sentenced to death because he did not have the assistance of counsel at his committal hearing. This issue has been adjudicated adverse to Fleming by this district court, by the Eleventh Circuit, and by the Supreme Court. However, petitioner contends that the ends of justice require a reconsideration of the merits of the claim because of new factual evidence in the form of an affidavit of Dan Cowart. Mr. Cowart was the justice of the peace who presided over the hearing. Petition for writ of habeas corpus at Exhibit F (affidavit of Cowart). He states in his affidavit that he did not believe that petitioner was represented by attorney Milliard Farmer, Jr. at the hearing. *Id.*

Mr. Cowart's affidavit is not new evidence. This court heard the same evidence from Milliard Farmer in 1982 during an evidentiary hearing held in the first federal habeas case. Petitioner could have asked Mr. Cowart to testify in the first case; however, his subjective opinion as to whether or not Fleming was represented at the hearing is not a conclusive factor, in making a finding as to whether petitioner was in fact represented by counsel.

Moreover, this court specifically found that the hearing was not a "committal hearing" and that it was not a critical stage in the criminal process against Fleming. *Fleming,* 560 F.Supp. at 535.

In addition, this court notes that the affidavit is dated December 13, 1984, and that it was submitted to the Eleventh Circuit in petitioner's petition for rehearing en banc. Beyond peradventure, it is not new evidence that would require this court to reconsider petitioner's third claim on the merits.

### Claim IV—Prosecutor's Closing Argument

■ Petitioner's fourth claim is that his sentence is unconstitutional because of the prosecutor's allegedly improper remarks in closing argument. Again, he contends that a change in the law satisfies the ends of justice requirement.

The case on which petitioner relies is *Caldwell v. Mississippi,* —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The Court held in *Caldwell* that a death sentence is invalid "when the sentencing jury is led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case." *Id.* at 2636–37. The prosecutor argued to the jury in *Caldwell* as follows:

> Ladies and gentlemen, I intend to be brief. I'm in complete disagreement with the approach the defense has taken. I don't think its fair. I think its unfair. I think the lawyers know better. Now, they would have you believe that you're going to kill this man and they know— they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it. Yet they ...

*Id.* at 2637. The prosecutor did not make a similar argument here. Instead, petitioner points only to the same statements that he argued were impermissible in his first federal habeas petition.

A reading of the entire *Caldwell* opinion shows that it is entirely consistent with the prior decisions of the Supreme Court and Eleventh Circuit on the issue of an allegedly improper closing argument. Accordingly, *Caldwell* is not new law and the

ends of justice do not require this court to reconsider this issue.

*Claim V—Application of the Death Penalty*

■ Petitioner's fifth and final claim is that his death sentence is unconstitutional because the State of Georgia's statutory capital sentencing process is arbitrary and discriminatory. This same claim was squarely rejected in well reasoned opinions by Judge Forrester and by the Eleventh Circuit. *McCleskey v. Zant,* 580 F.Supp. 338 (N.D.Ga.1984), *aff'd sub nom., McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985).

The criminal defendant in *McCleskey* has filed an application for a writ of certiorari to the Supreme Court, which is presently under advisement by the Court. *McCleskey v. Kemp,* 106 S.Ct. 53 (1985). Fleming contends that the ends of justice require that his sentence be stayed until the Court rules, since there is—according to petitioner—a strong possibility that his sentence was the result of arbitrariness and discrimination.

This court disagrees. The identical claim has been adjudicated in favor of the State of Georgia by the en banc Eleventh Circuit. Petitioner has no new evidence to support the claim but merely relies on the same evidence that was before the *McCleskey* courts.

John Eldon Smith made a similar argument in *Smith v. Kemp,* 715 F.2d 1459 (11th Cir.1983). The Eleventh Circuit held:

> To allow Smith to reassert this claim would allow any unsuccessful habeas petitioner to file additional successive applications by keeping teams of aides at work studying the same data and proffering additional arguments and conclusions derived from and based upon the ongoing study. That is precisely what Rule 9(b) prohibits. Without a further showing of how the ends of justice would be served by considering Smith's reassertion of the same discrimination claim, Rule 9(b) precludes consideration of the merits of petitioner's argument in this successive petition.

*Id.* at 1469. Likewise, in the present case, Rule 9(b) precludes reconsideration of this issue.

*Conclusion*

The petitioner has not shown that Claims I through V should be considered or reconsidered on the merits. Accordingly, the petition for a writ of habeas corpus is DISMISSED under Rule 9(b). Likewise, petitioner's motion for stay of execution is DENIED.

ORDER

■ Petitioner has asked the court to issue a certificate of probable cause to appeal. *See generally* 28 U.S.C.A. § 2253 (West 1971); Fed.R.App.P. 22(b). The Supreme Court has held that "[t]he primary means of separating meritorious from frivolous appeals should be the decision to grant or withhold a certificate of probable cause.... [A] certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot v. Estelle,* 463 U.S. 880, 892–93, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090, 1104 (1983) (quoting *Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971)). *See also Gaddy v. Linahan,* 570 F.Supp. 36, 37 (N.D.Ga.1983).

Petitioner in the present case has not made the required showing under *Barefoot.* Accordingly, the motion for a certificate of probable cause is hereby DENIED.

■ Petitioner has also filed a motion for leave to proceed on appeal in forma pauperis. Federal law provides: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a) (West 1966). *See also* Fed.R. App.P. 24(a). The term good faith means the presentation of issues on appeal which are not frivolous. It does not have a moral or subjective meaning.

Since this habeas petition was filed, the court has spent all its time carefully considering the issues presented. The court fully realizes the gravity of the case, since peti-

tioner is under sentence of death. Nevertheless, in this court's judgment, the appeal of the order entered earlier this morning cannot possibly present a meritorious issue. Claim I alleges a change in the law, but that alleged change is not even possibly applicable here. Claims II through V simply restate claims that were litigated previously. This is a classic example of abuse of the writ. For this reason, the court certifies that the appeal is not taken in good faith. Therefore, petitioner's motion for leave to proceed on appeal in forma pauperis is DENIED.

Petitioner also asks the court to stay the execution of his death sentence pending his appeal to the Eleventh Circuit. For the reasons discussed above, Fleming's appeal is frivolous and accordingly his motion for a stay pending appeal is DENIED.