Warren McCLESKEY,
Petitioner–Appellee,

v.

Walter ZANT, Superintendent, Georgia Diagnostic and Classification Center, Respondent–Appellant.

Nos. 88–8085, 89–8085.

United States Court of Appeals,
Eleventh Circuit.

Nov. 22, 1989.

As Amended Dec. 13, 1989.

Rehearing and Rehearing In Banc
Denied Feb. 6, 1990.

---

Mary Beth Westmoreland, Asst. Atty. Gen., Susan V. Boleyn, William B. Hill, Atlanta, Ga., for respondent-appellant.

Robert H. Stroup, Atlanta, Ga., Julius L. Chambers, NAACP Legal Defense Fund, James M. Nabrit, II, John Charles Boger, New York City, for petitioner-appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and RONEY, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This is a consolidated appeal by the State of Georgia from the district court's grant of Warren McCleskey's second petition for a writ of habeas corpus and from the district court's denial of the State's motion under Fed.R.Civ.P. 60(b) for relief from the judgment. The district court granted the writ solely on the basis of McCleskey's claim that his sixth amendment rights had been violated under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Because we find that the district court abused its discretion in failing to dismiss McCleskey's *Massiah* allegation as an abuse of the writ, we reverse the district court without reaching the merits of McCleskey's *Massiah* claim or of the State's Rule 60(b) motion.

## I. FACTS [1]

McCleskey was arrested and charged with the murder of a police officer during an armed robbery of the Dixie Furniture Store. The store was robbed by four men. Three entered through the back door and one through the front. Each of the four men was armed. McCleskey had a .38 caliber Rossi white-handled, nickel-plated pistol, Ben Wright had a sawed-off shotgun, and the other two had blue steel pistols. The man who entered through the front secured the store, forcing the employees to lie on the floor. The others rounded up the employees in the rear and began to tie them up with tape. The manager was forced at gunpoint to turn over the store receipts, his watch, and six dollars. Responding to a silent alarm, a police officer entered the store by the front door. He proceeded approximately fifteen feet down the center aisle. Two shots were fired. One shot struck the police officer in the head causing his death. The other shot glanced off a pocket lighter in the officer's pocket and lodged in a sofa. That bullet was recovered. The robbers fled. Sometime later, McCleskey was arrested in connection with another armed robbery.

McCleskey was identified by two of the store personnel as the robber who came in the front door. Shortly after his arrest, McCleskey confessed to participating in the robbery, but maintained that he was not the triggerman. One of his accomplices, Ben Wright, testified that McCleskey ad-

---

1. The statement of facts is taken from the Georgia Supreme Court's opinion on direct appeal, *McCleskey v. The State,* 245 Ga. 108, 263 S.E.2d 146 (1980).

mitted to shooting the officer. Offie Evans, a jail inmate housed near McCleskey testified that McCleskey made a "jail house confession" in which he claimed he was the triggerman. The police officer was killed by a bullet fired from a .38 caliber Rossi handgun. Though the weapon was not recovered, McCleskey had stolen a .38 caliber Rossi in a holdup of a Red Dot grocery store two months earlier.

## II. PRIOR PROCEEDINGS

The jury convicted McCleskey of murder and two counts of armed robbery. It sentenced McCleskey to death for the murder of the police officer and to consecutive life sentences for the two robbery counts. In 1980, these convictions and sentences were affirmed by the Georgia Supreme Court, *McCleskey v. State*, 245 Ga. 108, 263 S.E.2d 146, *cert. denied*, 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980). In January of 1981, McCleskey petitioned for habeas corpus relief in the Superior Court of Butts County, asserting over twenty challenges to his conviction and sentence. In an amendment to his petition, McCleskey alleged a *Massiah* violation, claiming that the introduction into evidence of statements he made to an informer violated his rights under the sixth amendment. *See Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199. The petition was denied after an evidentiary hearing and the Georgia Supreme Court denied McCleskey's application for a certificate of probable cause to appeal. The United States Supreme Court denied McCleskey's petition for certiorari. *McCleskey v. Zant*, 454 U.S. 1093, 102 S.Ct. 659, 70 L.Ed.2d 631 (1981).

McCleskey filed his first federal habeas petition in district court in December of 1981, asserting eighteen grounds for granting the writ. That petition did *not* include a claim under *Massiah*. It did, however, include a claim under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), alleging that the state prosecutor had failed to reveal that Offie Evans, one of its witnesses, had been promised favorable treatment as a reward for his testimony. In 1984, the district court granted habeas corpus relief as to McCleskey's *Giglio* claim. It ordered that his conviction and sentence for malice murder be set aside, but affirmed his convictions and sentences for armed robbery. *McCleskey v. Zant*, 580 F.Supp. 338 (N.D.Ga. 1984).

Both parties appealed and in 1985, the Eleventh Circuit, sitting *en banc*, reversed the district court's grant of the writ on the *Giglio* claim and affirmed on all claims denied by the district court. *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985) (en banc). McCleskey then filed a petition for a writ of certiorari in the Supreme Court of the United States. The Supreme Court granted certiorari limited to consideration of the application of the Georgia death penalty and affirmed the Eleventh Circuit. *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262, *petition for rehearing denied*, 482 U.S. 920, 107 S.Ct. 3199, 96 L.Ed.2d 686 (1987).

McCleskey filed a subsequent petition for a writ of habeas corpus in state court in June of 1987. In an amendment to that petition, McCleskey once again raised a *Massiah* claim, alleging that newly discovered evidence demonstrated that a jail inmate of McCleskey's was acting on behalf of the State as an informant. The state court granted the State's motion to dismiss and the Georgia Supreme Court denied McCleskey's application for a certificate of probable cause.

McCleskey filed the present petition for a writ of habeas corpus in federal district court in July of 1987. After evidentiary hearings on the petition in July and August of 1987, the district court entered an order granting habeas corpus relief only as to McCleskey's murder conviction and sentence based upon the finding of a *Massiah* violation. *McCleskey v. Kemp*, No. C87-1517A (N.D.Ga. Dec. 23, 1987).

The State now appeals the district court's grant of the writ, claiming that the district court abused its discretion in failing to dismiss McCleskey's *Massiah* allegation as an abuse of the writ and that the district

court erred in finding a violation of *Massiah*.[2]

## III. ABUSE OF THE WRIT

### A. *Background*

■ Under the doctrine of "abuse of the writ," a federal court may decline to entertain a second or subsequent habeas corpus petition that raises a claim that the petitioner did not raise in a prior petition. The doctrine is grounded in the court's equitable power to decline to entertain a habeas corpus petition properly within its jurisdiction when "a suitor's conduct in relation to the matter at hand ... disentitle[s] him to the relief he seeks." *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) (quoting *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963)).

■ The statutory basis for the doctrine of abuse of the writ in cases of successive petitions for habeas corpus can be found at 28 U.S.C. § 2244(b)[3] and Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts.[4] These provisions address the problem of prisoners filing the same claims in successive petitions as well as the problem of prisoners who abuse the writ by filing their claims piecemeal. A "successive petition" is one that raises a claim already adjudicated through a prior petition, while a petition that raises grounds for relief not raised in

the prior petition is analyzed as an "abuse of the writ." *See Gunn v. Newsome*, 881 F.2d 949, 955 n. 6 (11th Cir.1989) (en banc) (plurality opinion), *petition for cert. filed*, No. 89–611 (Oct. 16, 1989).

A federal court's decision to exercise its equitable power to dismiss a petition is based on different considerations in the two types of cases. In cases of successive petitions, equity usually will not permit a petitioner to reassert a claim resolved against him "in the hope of getting before a different judge in multijudge courts." *See* Sec. 2254 Cases R. 9 advisory committee's note. In cases of abuse of the writ, equity counsels against allowing "needless piecemeal litigation" or "collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078. In both instances, the need for finality in criminal law counsels strongly against courts repeatedly reviewing criminal convictions. *See Kuhlmann v. Wilson*, 477 U.S. 436, 452–53, 106 S.Ct. 2616, 2626–27, 91 L.Ed.2d 364 (1986) (plurality opinion).

■ The state has the burden of pleading that the habeas petitioner has abused the writ. *Price v. Johnston*, 334 U.S. 266, 291–92, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). This circuit has held that "[t]he state carries its burden by recounting the petitioner's writ history, identifying the claims not raised before the instant petition

---

**2.** This court stayed the briefing schedule of the appeal pending the State's filing in district court of a motion under Fed.R.Civ.P. 60(b) for relief from the judgment based on the availability of witness Offie Evans. The district court denied the motion and this court granted the State's motion to consolidate the State's original appeal and its appeal from the denial of the motion for relief from the judgment.

**3.** 28 U.S.C. § 2244(b) states as follows:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of

habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

**4.** Rule 9(b) provides as follows:

**Successive Petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

and alleging that the petitioner abused the writ in violation of 28 U.S.C. § 2254, Rule 9(b)." *Booker v. Wainwright,* 764 F.2d 1371, 1376 (11th Cir.1985), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). The State has clearly met its burden here, as it is evident that McCleskey did not assert his *Massiah* claim in his first federal habeas petition.

McCleskey's previous failure to assert the claim does not, however, require the federal court to dismiss his petition, for the courts have recognized that "not all piecemeal litigation is needless." *Booker v. Wainwright, id.; see also Haley v. Estelle,* 632 F.2d 1273, 1276 (5th Cir.1980).[5] Once the state has alleged abuse of the writ, the petitioner must be afforded the opportunity to justify his previous failure to raise the claim. In deciding whether a petitioner has presented sufficient justification, courts have required the petitioner to show that he did not deliberately abandon the claim and that his failure to raise it was not due to inexcusable neglect. *See Woodard v. Hutchins,* 464 U.S. 377, 379, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) (per curiam) (Powell, J., concurring, joined by four other justices); *Demps v. Dugger,* 874 F.2d 1385, 1391 (11th Cir.1989), *petition for cert. filed,* No. 89–5277, 1989 WL 113448 (Aug. 4, 1989); *Witt v. Wainwright,* 755 F.2d 1396, 1397 (11th Cir.), *cert. denied,* 470 U.S. 1039, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985); *Potts v. Zant,* 638 F.2d 727, 740–41 (5th Cir. Unit B 1981), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981).[6] If a court determines that the petitioner has failed to carry his burden of disproving an abuse of the writ, it may dismiss the petition unless the ends of justice demand that the court reach the merits. *Sanders,* 373 U.S. at 16–19, 83 S.Ct. at 1078–79; *Demps v. Dugger,* 874 F.2d at 1391; *Davis v. Kemp,* 829 F.2d 1522, 1526 (11th Cir.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988).

Whether a second or subsequent petition is to be dismissed on abuse of the writ grounds is left to the sound discretion of the district court. *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1079; *Darden v. Dugger,* 825 F.2d 287, 294 (11th Cir.1987), *cert. denied,* 485 U.S. 943, 108 S.Ct. 1125, 99 L.Ed.2d 285 (1988); *Potts v. Zant,* 638 F.2d at 741. Yet discretion in such matters is not unfettered, and its sound exercise will rarely permit a district court to hear a petition that clearly constitutes an abuse of the writ. *See Gunn v. Newsome,* 881 F.2d at 949.

In the instant appeal, the district court found that McCleskey could not be said to have intentionally abandoned his claim. We disagree and find that the district court abused its discretion in failing to dismiss a clearly abusive petition.

B. *Deliberate Abandonment of the Massiah Claim*

McCleskey asserts that his failure to raise a *Massiah* claim in his earlier federal petition is justified because at the time he filed that petition, he lacked the evidence to support such a claim. To demonstrate a violation of sixth amendment rights under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, a defendant must show that the prosecution deliberately elicited incriminating statements from him in the absence of his lawyer. *Massiah* itself involved statements made by a defendant free on bail to a co-indictee in a car that had been wired by the government. In *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court applied *Massiah* to a situation in which incriminatory statements were made to a cellmate who was a government informant. In *Kuhlmann v. Wilson,* the Supreme Court stressed that a defendant alleging a *Massiah* violation "must demonstrate that the police and their informant

---

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

6. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." 477 U.S. at 459, 106 S.Ct. at 2630.[7]

McCleskey bases his *Massiah* claim on two pieces of evidence. The first is a 21–page written statement of Offie Evans, a prisoner who was incarcerated in the cell next to McCleskey's when McCleskey was in the Fulton County Jail awaiting trial. Evans testified against McCleskey at trial, relating several incriminating statements made by McCleskey. The written statement, which had been given to the Atlanta Police Department in August of 1978, sets out these conversations in great detail, demonstrating that Evans lied to McCleskey in order to get information from him.[8] McCleskey argues that the written statement shows evidence of an *ab initio* relationship between Evans and the prosecution and is thus highly relevant to his *Massiah* claim.

The second piece of evidence McCleskey uses to support his *Massiah* claim is the testimony of Ulysses Worthy who was captain of the day watch at the Fulton County Jail during the summer of 1978. Worthy testified at two separate points during the district court hearings on McCleskey's second habeas petition. Though Worthy's testimony was at times confused and contradictory, the district court credited Worthy's assertion that at some point some officer involved with the case had asked that Evans be moved to a different cell. The district court judge relied heavily on Worthy's testimony in holding that McCleskey had presented a valid *Massiah* claim. In fact, he found that "[t]he lack of corroboration by other witnesses is not surprising; the other witnesses, like Assistant District Attorney Parker, had no reason to know of a request to move Evans or, like Detective Dorsey, had an obvious interest in conceal-

ing any such arrangement. Worthy, by contrast, had no apparent interest or bias that would explain any conscious deception." *McCleskey*, No. C87–1517A, slip op. at 22.

McCleskey maintains that he was unaware of both pieces of evidence critical to his *Massiah* claim until well after he filed his first federal habeas petition. It is uncontested that he did not obtain Evans' statement until July of 1987 and that he did not know about the existence of Worthy until the time of the hearing on the second federal habeas petition. The State strongly contends, that habeas counsel realized or should have realized that Evans had made a written statement concerning his conversations with McCleskey and asserts that petitioner's counsel should have made some effort to obtain that statement. The district court found, however, that McCleskey was not in fact aware of the written statement, and we cannot say that this determination is clearly erroneous.

Assuming that McCleskey was unaware of both pieces of evidence, the question before us is whether McCleskey's unawareness of the *factual* bases for his *Massiah* claim at the time of his first federal habeas petition is sufficient to justify his failure to present the claim. The district court found that it was sufficient, holding that McCleskey's unawareness precluded a finding of deliberate abandonment of the claim, despite the fact that McCleskey had raised it in his first state habeas petition. We disagree.

In finding that McCleskey did not deliberately abandon his *Massiah* claim, the district court stated that:

First petitioner cannot be said to have intentionally abandoned this claim. Although petitioner did raise a *Massiah* claim in his first state petition, that claim was dropped because it was obvious that

---

7. In *Lightbourne v. Dugger*, 829 F.2d 1012 (11th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988), this circuit characterized petitioner's burden in a *Massiah/Henry* claim as one involving two elements: "In order to establish a violation of the Sixth Amendment in a jailhouse informant case, the accused must show (1) that a fellow inmate was a government

agent; and (2) that the inmate deliberately elicited incriminating statements from the accused." *Id.* at 1020.

8. For instance, Evans told McCleskey that his name was Charles, that he was the uncle of codefendant Ben Wright, and that he was supposed to be a participant in the robbery himself.

it could not succeed given the then-known facts. At the time of his first federal petition, petitioner was unaware of Evans' written statement, which, as noted above, contains strong indications of an *ab initio* relationship between Evans and the authorities. Abandoning a claim whose supporting facts only later become evident is not an abandonment that "for strategic, tactical, or any other reasons ... can be described as the deliberate by-passing of state procedures." ... Petitioner's *Massiah* claim is therefore not an abuse of the writ on which no evidence should have been taken. This is not a case where petitioner has reserved his proof or deliberately withheld his claim for a second petition.... Nor is the petitioner now raising an issue identical to one he earlier considered without merit.

*McCleskey,* No. C87–1517A, slip op. at 24 (citations omitted).

This holding by the district court misconstrues the meaning of deliberate abandonment. McCleskey included a *Massiah* claim in his first state petition, dropped it in his first federal petition, and now asserts it again in his second federal petition.[9] Given that McCleskey had asserted the *Massiah* claim in his first state habeas petition, it is clear that the issue was not unknown to him at the time of his first federal petition. Further, we must assume that at the time McCleskey filed his first state habeas petition, counsel had determined that there was some factual basis for a *Massiah* claim. Indeed, such a determination is not surprising. Not only was

counsel aware that Evans was in a cell next to McCleskey,[10] but counsel was also aware that some sort of relationship existed between Evans and the police, as this formed the basis of McCleskey's *Giglio* claim.[11] The petitioner and his counsel did not accidentally fail to include the *Massiah* claim in the federal petition, but made a knowing choice not to pursue the claim after having raised it previously. This constitutes prima facie evidence of deliberate abandonment. In *Darden v. Dugger,* we stated that:

> The record shows that the issue presented in this third petition was specifically withdrawn from the district court's consideration as being not well founded. The issue was abandoned. Intentional abandonment of a claim is precisely the context that application of the concept of abuse of the writ is intended to address. *Witt,* 755 F.2d at 1397. Petitioner may be deemed to have waived his right to a hearing on a successive application for federal habeas relief when he deliberately abandons one of his grounds at the first hearing.

825 F.2d at 294.

When asked at the second federal habeas hearing why he did not pursue the *Massiah* claim in his first federal petition, counsel responded that his efforts to find evidence in support of the claim had failed. It appears, however, that these efforts were somewhat lacking. Counsel testified that he informally attempted to contact jailers at the Fulton County Jail, but that they could provide him with no information.[12]

9. In an amendment to his first state petition, McCleskey alleged that:

> The introduction into evidence of petitioner's statements to an informer, elicited in a situation created to induce the petitioner to make incriminating statements without assistance of counsel, violated the petitioner's right to counsel under the Sixth Amendment to the Constitution of the United States and Section 2–111 of the 1976 Constitution of the State of Georgia.

10. Evans testified at trial as to certain statements that McCleskey had made in prison.

11. In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme

Court held that the state violates due process when it obtains a conviction on the basis of a witness's testimony when the witness has failed to disclose a promise of favorable treatment from the prosecution. McCleskey included a *Giglio* claim in his first state and first federal habeas petitions.

12. At his second federal habeas hearing, the lawyer who represented McCleskey at the first federal habeas hearing testified that he "spoke with a couple of Atlanta Bureau of Police Services Officers" in order to find out how to develop factual evidence in support of a claim. Pursuant to their suggestion, counsel spoke with two or three persons who were deputies at the Fulton County Jail. He testified that "none of

He also noted that at a deposition taken for the first state habeas hearing, Russell Parker, the District Attorney prosecuting the case, claimed that he was unaware of any instance in which Evans had worked for the Atlanta Police Department prior to his overhearing conversations at the Fulton County Jail. Counsel testified that he did not carry the *Massiah* claim over into the federal habeas petition because he "looked at what we had been able to develop in support of the claim factually in the state habeas proceeding and made the judgment that we didn't have the facts to support the claim and, therefore, did not bring it into federal court."

■ Abandoning a claim after initial investigatory efforts prove unsuccessful cannot insulate a petitioner from abuse of the writ. *See Witt v. Wainwright*, 755 F.2d at 1397 (insufficient to allege that evidence was not available if it was within petitioner's power to elicit such evidence at time of earlier petition); *Woodard v. Hutchins*, 464 U.S. 377, 379 & n. 3, 104 S.Ct. 752, 753 & n. 3, 78 L.Ed.2d 541 (1984) (per curiam) (Powell, J., concurring, joined by four other justices) (petitioner found to have abused the writ when he is unable to explain why examination providing evidence of insanity was not conducted earlier); *Antone v. Dugger*, 465 U.S. 200, 205 & n. 3, 206, 104 S.Ct. 962, 964 & n. 3, 965, 79 L.Ed.2d 147 (1984) (per curiam) (haste with which first habeas petition prepared does not require courts to consider claims withheld from that petition if substance could have been presented in first petition).

■ McCleskey places great emphasis on the fact that the State allegedly withheld Evans' 21–page statement from both trial and habeas counsel. The statement was ultimately obtained in June of 1987 through a request pursuant to the Georgia Open Records Act, O.C.G.A. § 50–18–72(a). It is clear, however, that the statement itself does not demonstrate the existence of a *Massiah* violation. At most, it was simply the catalyst that caused counsel to pursue the *Massiah* claim more vigorously. The key piece of evidence supporting McCleskey's *Massiah* claim was the testimony of Worthy, who testified for the first time at the second federal habeas hearing in July of 1987. Counsel claims that he did not discover Worthy until he engaged in a "massive, indiscriminate effort to subpoena everyone whose name was mentioned in any document." McCleskey has not presented any reason why counsel would have been unable to contact Ulysses Worthy back in 1981 when the first federal habeas petition was filed. Nor has he shown that a more extensive effort at that time to track down persons with information as to what transpired in the county jail during the summer of 1978 would not have turned up Worthy. A petitioner and his counsel may not circumvent the abuse of the writ doctrine by failing to follow through with an investigation and then later asserting that the claim could not have succeeded earlier on the facts as then known. It will only be possible to avoid piecemeal litigation if counsel is required to make a thorough investigation of the facts at the time of petitioner's first petition for habeas corpus.[13]

### C. *Ends of Justice*

Having found that McCleskey abused the writ by deliberately abandoning his *Massiah* claim, we must now decide whether the "ends of justice" require consideration of

---

them had any information. Basically they had no recollection of the circumstances regarding how Evans came to be assigned to the jail cell that he was assigned to or of any conversations with the Atlanta Bureau of Police Services Detectives regarding Offie Evans' assignment to that jail cell."

Counsel apparently made no attempt to contact persons who clearly had contact with Evans and McCleskey at the Fulton County Jail. He testified that he did not speak to Detective Dorsey (mentioned by Evans in his testimony at the first state habeas hearing), to Detectives Jowers or Harris (officers who had investigated the McCleskey case), or Deputy Hamilton (who testified at trial regarding his contact with Mr. Evans).

13. We also note that in 1981 there apparently still existed records listing each prisoner's cell assignment and any visitation of prisoners by outsiders. These records, which would have corroborated or disproved Worthy's testimony, have since been destroyed.

his claim on the merits.[14] *See Sanders v. United States*, 373 U.S. at 16–19, 83 S.Ct. at 1078–79. In *Kuhlmann v. Wilson*, the Supreme Court attempted to give greater content to the open-ended "ends of justice" inquiry. Its statement, however, that "the 'ends of justice' require federal courts to entertain such petitions only where petitioner supplements his constitutional claim with a colorable showing of factual innocence," 477 U.S. at 454, 106 S.Ct. at 2627, commanded only a plurality of the justices. *See Messer v. Kemp*, 831 F.2d 946, 958 n. 19 (11th Cir.1987) (en banc), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 902 (1988). Thus, the circumstances under which ends of justice would require rehearing of an otherwise abusive petition remain unparticularized.

We find it unnecessary to more narrowly define the circumstances in this case. For, the instances in which ends of justice would require a rehearing of a claim do not include those in which a violation of a constitutional right would be found to constitute harmless error.[15] The members of this panel disagree as to whether the district court was correct in finding that McCleskey had established a *Massiah* violation. Pretermitting that inquiry, however, the panel is unanimous that any violation that may have occurred would constitute harmless error and that the district court erred in concluding otherwise.

### D. *Harmless Error*

 The remedy for a *Massiah* violation is not an automatic reversal of a conviction, but rather the exclusion of evidence tainted by the violation of petitioner's right to counsel. *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). The previous use of the tainted evidence will not result in a reversal of a conviction if it constituted "harmless error." Under the harmless error doctrine, the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See also, Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (harmless error analysis applied to sixth amendment violation tainting evidence in sentencing phase of capital trial); *Brown v. Dugger*, 831 F.2d 1547, 1554 (11th Cir.1987).

In this case, the district court held that the error complained of could not be found harmless because Evans' testimony concerning McCleskey's incriminating statements was critical to the State's case. In reaching this conclusion, the court ignored the Eleventh Circuit's previous discussion in *McCleskey*, 753 F.2d at 884–85, of the importance of the evidence introduced through Evans' testimony at trial. Though that discussion occurred in the context of McCleskey's *Giglio* claim, it clearly has bearing on the import of Evans' testimony in the context of McCleskey's *Massiah* claim. It is true, as petitioner argues, that the harmless error inquiry in the case of a *Giglio* claim differs from the inquiry in the case of a *Massiah* violation, but this difference does not save McCleskey's claim.

The crucial question in a *Giglio* claim is whether the state's failure to disclose its promise of reward to a witness affected the judgment of the jury as to the credibility of that witness. *See Giglio*, 405 U.S. at 154, 92 S.Ct. at 766. In its previous opinion, the Eleventh Circuit held that the judgment of the jury that convicted McCleskey was not affected by the lack of disclosure. Its holding was based on two separate grounds. First, it found that "Evans' credibility was exposed to substantial impeachment even without the detective's statement and the inconsistent description of his escape," as the jury had already been made

---

14. The district court did not reach the "ends of justice" inquiry as it found that McCleskey's claim did not constitute abuse of the writ.

15. *See Messer v. Kemp*, 831 F.2d at 958–59: Because we conclude, as a matter of law, that the record in this case fails to disclose an *Ake* violation, our "ends of justice" analysis need not proceed any further. That is, we need not address any other factors relevant to the "ends of justice" in light of our conclusion that no constitutional violation occurred.

aware of Evans' extensive list of past convictions. 753 F.2d at 884. Second, and more important for our purposes, the Eleventh Circuit found that, in light of all the other evidence presented to the jury, Evans' testimony could not " 'in any reasonable likelihood have affected the judgment of the jury.' " *Id.* at 885 (quoting *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959)). This is precisely the finding that must be made in a harmless error analysis under *Massiah* and upon reexamination, we find no reason to disturb this finding.

Evans was called by the State on rebuttal to strengthen its proof that McCleskey was the triggerman at the holdup. He testified that McCleskey had admitted to him that he had shot the policeman and that McCleskey had admitted to wearing makeup to disguise himself during the robbery. He also stated that McCleskey said he would have shot his way out even if there had been a dozen policemen.

Turning first to Evans' testimony regarding McCleskey's admission that he was the triggerman, we feel that the State has met its burden of proving, beyond a reasonable doubt, that this testimony did not contribute to the verdict. First, as noted by the en banc court, McCleskey's codefendant, Ben Wright, also testified that McCleskey was the triggerman. Though Georgia law requires corroboration of an accomplice's testimony in felony cases, it is clear that corroboration can be through circumstantial as well as direct evidence. *Davis v. State*, 178 Ga.App. 760, 344 S.E.2d 730, 732 (Ga.App.1986) (quoting *Gunter v. State*, 243 Ga. 651, 655, 256 S.E.2d 341 (Ga.1979)).

The State presented a substantial amount of circumstantial evidence. McCleskey himself confessed to his participation in the robbery. The officer was killed by the man who entered and secured the front of the store while the other three men were in the back. McCleskey was identified by two of the store personnel as the robber who came in the front door. The officer was killed by a bullet from a .38 caliber Rossi handgun. The State presented evidence that McCleskey had sto-

len a .38 caliber Rossi in a previous holdup. The gun that McCleskey had stolen had a white handle. The State presented testimony from an eyewitness that the robber who ran out the front door after the robbery was carrying a pearl-handled pistol. This evidence not only corroborates Ben Wright's testimony, but is of sufficient quantity to allow this court to find that any additional testimony by Evans did not contribute to the verdict.

Evans' testimony regarding McCleskey's statement that he was wearing makeup could also not have reasonably affected the jury's determination. The en banc court found that:

> Evans' testimony that McCleskey had made up his face corroborated the identification testimony of one of the eyewitnesses. Nevertheless, this evidence was not crucial to the State's case. That McCleskey was wearing makeup helps establish he was the robber who entered the furniture store through the front door. This fact had already been directly testified to by McCleskey's accomplice and two eyewitnesses as well as corroborated by McCleskey's own confession. That Evans' testimony buttresses one of the eyewitnesses' identifications is relatively unimportant.

753 F.2d at 885.

Finally, petitioner asserts that Evans' testimony as to McCleskey's statement that he would have been willing to shoot twelve policemen affected the jury's finding as to the presence of malice and increased its willingness to impose a sentence of death. Once again, we find that the en banc court's analysis of this issue demonstrates that this testimony was not crucial to the jury's finding of malice murder. The court wrote that:

> In his closing argument, however, the prosecutor presented to the jury three reasons supporting a conviction for malice murder. First, he argued that the physical evidence showed malicious intent because it indicated that McCleskey shot the police officer once in the head and a second time in the chest as he lay dying on the floor. Second, the prosecutor asserted that McCleskey had a choice, either to surrender or to kill the officer. That he chose to kill indicated malice.

Third, the prosecutor contended that McCleskey's statement to Evans that he still would have shot his way out if there had been twelve police officers showed malice. This statement by McCleskey was not developed at length during Evans' testimony and was mentioned only in passing by the prosecutor in closing argument.

*Id.* at 885. In addition, the court finds no reasonable likelihood that the jury's imposition of the death penalty was affected by Evans' testimony. The prosecutor did not introduce Evans as a witness at the sentencing phase of trial, nor did he use Evans' testimony to portray McCleskey as a hardened criminal deserving of death, but concentrated instead on McCleskey's prior convictions.[16]

Because evidence other than Evans' testimony presented in the case presents such a clear indication of McCleskey's guilt, this court finds beyond a reasonable doubt that the jury would have convicted and sentenced McCleskey as it did even without Evans' testimony. Our determination that any *Massiah* error would be harmless precludes a finding that the ends of justice would require us to entertain McCleskey's claim on the merits.

## CONCLUSION

The judgment of the district court granting the petition for writ of habeas corpus is reversed and the petition is hereby denied as an abuse of the writ.

REVERSED.

---

**16.** This case can easily be distinguished from *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), a case that petitioner cites as controlling. In *Satterwhite*, a psychiatrist, who had interviewed the defendant in violation of his sixth amendment rights, testified in a separate sentencing proceeding that the defendant presented a threat to society through continuing acts of violence. In finding that the constitutional error was not harmless, the Court stressed that under Texas law, a jury may not sentence a defendant to death unless it finds that the defendant would commit acts of violence and would be a threat to society. Additionally, the Court found that the psychiatrist's testimony stood out "both because of his qualifications as a medical doctor specializing in psychiatry and because of the powerful content of his message." *Id.* at ——, 108 S.Ct. at 1799. In the instant case, the jury was not instructed as to future dangerousness, and the Eleventh Circuit found, in its previous discussion of the *Giglio* violation, that Evans' testimony had already been greatly impeached by his own criminal background. 753 F.2d at 884.