Christopher A. BURGER, Petitioner–Appellant,

v.

Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent–Appellee.

No. 90–9137.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1993.

Millard Farmer, Joseph M. Nursey, Atlanta, GA, John H. Blume, Columbia, SC, for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, GA, for respondent-appellee.

Before HATCHETT, EDMONDSON and COX, Circuit Judges.

PER CURIAM:

In this capital case, we affirm the district court's ruling that all of the appellant's claims are barred due to abuse of the writ, successive petition, or procedural default doctrines.

### FACTS

On September 4, 1977, the appellant, Christopher Burger, who was seventeen years old, and Thomas Stevens, army privates stationed at Fort Stewart, Georgia, were drinking at a club on the army base. Another private, James Botsford, had arranged for them to pick him up from the Savannah airport and bring him back to the base. After Burger and Stevens spent all their money, they decided to rob a taxicab driver. Roger Honeycutt, another soldier who drove a taxicab to supplement his military income, responded to their call. After entering the taxicab, Burger and Stevens threatened Honeycutt with a knife and a sharpening tool, forced him to stop the taxicab, robbed him of $16, and placed him in the back seat with Stevens. As Burger drove the taxicab, Stevens instructed Honeycutt to take off his clothes. Once Honeycutt had undressed, Stevens threw Honeycutt's clothes out the taxicab window, blindfolded him, tied his hands behind his back, and sexually assaulted him. Eventually, Burger and Stevens placed Honeycutt in the trunk of the taxicab.

After Burger and Stevens picked up Botsford at the Savannah airport and while driving back to Fort Stewart, Burger and Stevens told Botsford about the robbery and conversed with Honeycutt in the trunk through the back seat wall. After hearing

of the robbery, Botsford encouraged Burger and Stevens to release Honeycutt unharmed. But, after leaving Botsford at the base, Burger and Stevens drove the cab into a pond with Honeycutt alive in the trunk. A week later, Botsford contacted law enforcement authorities. After law enforcement officers arrested Burger and Stevens, they made complete confessions, and Burger led law enforcement officers to Honeycutt's body.

## PROCEDURAL HISTORY

On January 25, 1978, a jury convicted Burger of murder, and the court imposed the death penalty. Burger's direct appeal and post-conviction proceedings are detailed in *Burger v. Kemp,* 483 U.S. 776, 779–82, 107 S.Ct. 3114, 3117–19, 97 L.Ed.2d 638 (1987). In this decision, the Supreme Court affirmed the Eleventh Circuit's denial of Burger's federal habeas corpus petition finding that his counsel's performance was effective notwithstanding the possible conflict of interest and counsel's failure to present mitigating evidence. This affirmance ended Burger's first federal habeas corpus proceeding.

Burger filed a second habeas corpus petition in the Georgia state courts. On October 14, 1987, the state habeas corpus court denied relief. Subsequently, the Georgia Supreme Court stayed the proceedings and remanded the case to the state habeas corpus court in Butts County pending the United States Supreme Court's decision in *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), and *Stanford v. Kentucky,* 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). In staying the proceedings, the Supreme Court of Georgia stated:

> The stay of execution is to be continued in effect pending rendition of the Supreme Court's decision in *Thompson v. Oklahoma,* and the superior court's is-

suance of its ruling in light thereof. At that time, another certificate of probable cause to appeal may be filed and we will, if necessary, consider the question of whether our habeas corpus procedural default statute O.C.G.A. § 9–14–51 bars the claim contained in this successive habeas corpus petition that as a matter of constitutional law the death penalty would not be imposed upon an individual who was a minor at the time of the crime for which he was sentenced or committed.

On June 29, 1988, the Supreme Court in *Thompson* held that the execution of a person under sixteen years old violates the Eighth Amendment. Conversely, in *Stanford,* the Court held that the execution of a person sixteen or seventeen years old does not violate the Eighth Amendment. Twenty-one months after the state habeas corpus court's original order dismissing Burger's second state habeas corpus petition as successive within the meaning of O.C.G.A. § 9–14–51 and twelve months after the Supreme Court's *Thompson* decision, Burger submitted a ninety-five page amendment to his state habeas corpus petition. The state habeas corpus court denied Burger's request to file the amendment, and the Georgia Supreme Court denied Burger's application for a certificate of probable cause to appeal.[1]

Thereafter, Burger filed his second federal habeas corpus petition. While the second petition for writ of habeas corpus was pending in district court, the Superior Court of Glenn County scheduled Burger's execution for the period from December 18, 1990, to December 25, 1990. On December 14, 1990, the district court denied Burger's second application for federal habeas corpus relief ruling that his claims were either procedurally barred, constituted an abuse of the writ, or meritless. Thus, Burger filed an application for a certificate of prob-

---

1. Burger asserts that *O.C.G.A.* § 9–11–15 allows a party to amend a pleading without leave of court any time before a pretrial order is entered. Nonetheless, O.C.G.A. § 9–14–51 provides the exclusive procedure for seeking a writ of habeas corpus and does not contain a provision for the entry of a pretrial order. Even if a pretrial order was required, Burger did not submit the amendment until twenty-one months after the state habeas corpus court's original order, which was filed October 14, 1987. Thus, the court correctly found Burger's amendment untimely.

able cause with the Eleventh Circuit Court of Appeals. On December 17, 1990, the Eleventh Circuit granted the certificate of probable cause and stayed Burger's execution because the issues he presented issues were similar to those in *Clisby v. Jones,* 907 F.2d 1047 (1990), in which the court had recently granted a rehearing *en banc.*[2]

### ISSUES

Burger raises the following issues: (1) whether he was denied his constitutional right to a competent mental health evaluation with a competent mental health professional, and whether an evidentiary hearing should have been conducted on this claim; (2) whether O.C.G.A. § 17–10–30(b)(7)'s aggravating circumstance is constitutionally vague and overbroad as applied; (3) whether the penalty phase instructions provided the jury with a constitutionally adequate vehicle to consider all relevant mitigating evidence; (4) whether the jury could have construed the sentencing phase instructions to require that it unanimously agree to the existence of mitigating circumstances; (5) whether the prosecutor's sentencing argument violated the eighth and fourteenth amendments; and (6) whether the trial judge's reasonable doubt definition violated the Fourteenth Amendment.[3]

### CONTENTIONS

Burger contends that his claims are not procedurally barred because he filed the amendment to the second habeas corpus petition in the state courts before the court issued a final order. Moreover, he argues that under Georgia law, a party may amend a pleading as a matter of right until the entry of a final order if a pretrial order is not entered. *See Jackson v. Paces Ferry Dodge,* 183 Ga.App. 502, 359 S.E.2d 412 (1987). Accordingly, in his view, this court should address his issues on the merits.

The state, however, contends that the district court acted properly in denying Burger's petition for writ of habeas corpus

on abuse of the writ and procedural default grounds. Moreover, it contends that Burger has not presented any reasons which require relitigation or reconsideration.

### DISCUSSION

After a diligent review, this court concludes that abuse of the writ, procedural default, and successive petition doctrines preclude consideration of all of Burger's claims. The district court dismissed each of Burger's claims on abuse of the writ, procedural default, or successive petition doctrines. Thus, we begin by explaining the procedural bar doctrines.

In the district court's December 14, 1990, order, it eloquently differentiated between abuse of the writ, successive petition, and procedural default. It stated:

#### Abuse of the Writ

Under 'abuse of the writ' doctrine, a federal court may decline to entertain a second or subsequent habeas corpus petition that raises a claim that the petitioner did not raise in a prior petition. *E.g. McCleskey v. Kemp [Zant ],* 890 F.2d 342, 346 (11th Cir.1989), *cert. granted,* [496 U.S. 904] 110 S.Ct. 2585, [110 L.Ed.2d 266] (1990). The state has the burden of pleading that the habeas petitioner has abused the writ. *E.g. Johnson v. Dugger,* 911 F.2d 440, 478 (11th Cir.1990); *McCleskey,* 890 F.2d at 346. The state's initial burden is not a heavy one. It need only recount the petitioner's writ history, identify claims not raised before the instant petition, and allege that the petitioner abused the writ in violation of 28 U.S.C. § 2254, Rule 9(b). *E.g. McCleskey,* 890 F.2d at 346–47. Once the state satisfies the burden of pleading abuse, 'the burden of proving that there has been no abuse shifts to the petitioner.' *Johnson,* 911 F.2d at 478. This burden is met when the petitioner shows 'that he did not deliberately abandon the claim, that his failure to

---

**2.** The Eleventh Circuit subsequently vacated *Clisby. See Clisby v. Jones,* 920 F.2d 720 (1990).

**3.** We address Burger's final issue regarding procedural bar doctrines in our discussion concerning each individual issue.

raise it was not due to inexcusable neglect' *McCleskey*, 890 F.2d at 347, and 'that he ... had some justifiable reason for omitting the claim in an earlier petition.' *Johnson*, 911 F.2d at 478 (citation omitted). A petitioner may satisfy this burden, for example, by (1) showing that there is newly discovered evidence that was not available at the time of the original filing, or (2) that there has been a retroactive change in the law. *Id.* Even if the prisoner cannot convince the court that there was no abuse of the writ, he 'may still be able to obtain federal court review by establishing that the 'ends of justice' so require.' *Id.* (citation omitted). While the contours of the 'ends of justice' are rather fuzzy, it is clear that 'the ends of justice exception does not require reaching the merits of a claim that does not allege a violation of federal law or where the record discloses the absence of such a violation.' *Martin v. Dugger*, 891 F.2d 807, 810 (11th Cir.1989) (citation omitted), *cert. denied*, [498 U.S. 881] 111 S.Ct. 222 [112 L.Ed.2d 178] (1990).

### Successive Petition

A 'successive petition' is one that raises a claim already adjudicated through a prior petition. *Martin*, 891 F.2d at 890 [809]; *McCleskey*, 890 F.2d at 346. Rule 9(b) of the habeas corpus [sic] states that a district court may dismiss such claims unless the 'ends of justice' militate in favor of deciding the merits of the claim. *E.g. Collins v. Zant*, 892 F.2d 1502, 1505 (11th Cir.) (per curiam), *cert. denied*, [498 U.S. 881] 111 S.Ct. 225 [112 L.Ed.2d 180] (1990). The ends of justice in this context 'are defined by objective standards such as whether there was a full and fair hearing on the original petition or whether there was an intervening change in the facts of the case or the law.' *Fleming v. Kemp*, 837 F.2d 940, 943 (11th Cir.1988) (per curiam), *cert. denied*, [490 U.S. 1028] 109 S.Ct. 1764 [104 L.Ed.2d 200] (1989).

### Procedural Default

If a petitioner is unable to obtain a state court ruling on the merits of his claim, a district court generally is precluded from reaching the merits of the claim. Such a procedural default, however, will not bar a federal court from reaching the merits of a claim where a petitioner can show sufficient cause for and prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87 [97 S.Ct. 2497, 2506, 53 L.Ed.2d 594] (1977). Where, for example, 'a petitioner presents a claim that the state collateral attack court refused to hear [sic] because it was contained in a successive petition [pursuant to a state successive petition rule], the petitioner must demonstrate cause for his failure to raise the claim in his earlier collateral proceeding and actual prejudice.' *Presnell v. Kemp*, 835 F.2d 1567, 1580 (11th Cir.), *cert. denied*, 488 U.S. 1050 [109 S.Ct. 882, 102 L.Ed.2d 1004] (1988). This rule also applies to unexhausted claims not previously presented in state collateral attack proceedings where the district court can discern from state law that a successive state collateral attack court would deem the claims procedurally barred. *Collier v. Jones*, 910 F.2d 770, 773 (11th Cir.1990).

The district court's analysis is consistent with the Supreme Court's recent ruling in *McCleskey v. Zant*, 499 U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey*, the Supreme Court held that both a procedural default and an abuse of the writ could be excused after a showing of cause and prejudice. It stated:

We conclude from the unity of structure and purpose in the jurisprudence of state procedural defaults and abuse of the writ that the standard for excusing the failure to raise a claim at the appropriate time should be the same in both contexts. We have held that a procedural default will be excused upon a showing of cause and prejudice.... We now hold that the same standard applies to determine if there has been an abuse of the writ through inexcusable neglect.

*McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1470, 113 L.Ed.2d at 544 (citations omitted). Additionally, it stated:

The cause and prejudice analysis we have adopted for cases of procedural default applies to an abuse of the writ inquiry in the following manner. When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if with clarity and particularity it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse this failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice will result from a failure to entertain the claim. Application of the cause and prejudice standard in the abuse of the writ context does not mitigate the force of *Teague v. Lane, supra,* [489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ] which prohibits with certain exceptions the retroactive application of new law to claims raised in federal habeas.

*McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1470, 113 L.Ed.2d at 545. Thus, under abuse of the writ or procedural bar, Burger must show cause and prejudice to overcome the procedural barrier.

### *Ake* Claim

■ Burger argues that his 1977 mental health examination, which his independent-ly retained psychiatrist, Dr. Joseph O'Haire, conducted, was inadequate and unreliable. Burger alleges that Dr. O'Haire was not licensed or qualified to conduct an appropriate medical examination and misrepresented his credentials. He further asserts that Dr. O'Haire's social and medical history were undiscovered or undeveloped, that Dr. O'Haire based his 1977 mental health examination on erroneous information, incorrect data interpretations, and abnormal diagnostic studies.

Burger also argues that a proper examination would have revealed that he was severely mentally ill and mentally impaired. He further argues that abuse of the writ does not apply if a petitioner relies upon a new rule of law. *See, e.g., Fleming v. Kemp,* 837 F.2d 940 (11th Cir.1988). Thus, Burger claims that at the filing of his first petition in 1980, *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) was unforeseeable. Accordingly, a reasonably competent attorney could not have predicted that *Ake* would provide a defendant with a right to a psychiatrist.[4] The state, however, correctly asserts that the presentation of this issue in Burger's second federal habeas corpus petition constitutes an abuse of the writ.

It is undisputed that Burger did not include this claim in his first federal habeas corpus petition. Thus, the new claim can only be heard on the merits if Burger can show cause which " 'requires a showing of some external impediment preventing counsel from constructing or raising a claim.' " *McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1472, 113 L.Ed.2d at 547 (quoting *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986)). Burger has failed to demonstrate cause for omitting the *Ake* claim in his first federal petition. Additionally, his assertion that he included it in his amendment to his state habeas corpus court petition does not constitute cause because the state court dismissed the amendment as untimely. More-

---

**4.** *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) held that when a defendant's sanity is an important factor, the state must provide "a competent psychiatrist who will conduct an appropriate examination, and assist in evaluation, preparation, and presentation of the defense." *Ake,* 470 U.S. at 83, 105 S.Ct. at 1096.

over, Burger has not argued that the government in any way precluded him from submitting the amendment within the statutory time period.[5]

Furthermore, we need not address Burger's assertion that *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) requires that we apply *Ake* retroactively. *Ake* held that when a defendant's sanity is an important factor, the state must provide "a competent psychiatrist who will conduct an appropriate examination, and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 83, 105 S.Ct. at 1096. The state provided Burger with the psychiatrist of his choice. Thus, the state complied with the *Ake* standard. Thus, whether *Ake* is a new rule under *Teague* does not affect the outcome on this claim.

■ Additionally, O.C.G.A. § 9–14–51 (1982) would lead a state habeas corpus court to find this claim procedurally defaulted because Burger did not raise it in his first or second state habeas corpus petitions. Accordingly, the procedural default and abuse of the writ doctrines serve as a procedural bar and preclude habeas corpus relief.

■ Alternatively, Burger argues that if his claims constitute an abuse of the writ, the ends of justice require consideration.[6] Moreover, in his view, a court may always find that the ends of justice require it to reach a claim on its merits. *See Gunn v. Newsome*, 881 F.2d 949, 955 n. 6 (11th Cir.1989). We reject Burger's claim that the ends of justice require that we address the merits of his claims. The ends of justice allow a court to excuse state procedural defaults, abuses of the writ, and successive claims when consideration is necessary

to prevent a fundamental miscarriage of justice, and when the petitioner has made a colorable showing of factual innocence. *See McCleskey*, 499 U.S. at ——, 111 S.Ct. at 1471. None of these factors are present in this case. The state supplied Burger with the psychiatrist that he chose. No relief based on this issue is warranted.

The district court properly found the other claims to be barred because of procedural default or successive and abusive petition rules. Likewise, the ends of justice exception does not require consideration of the other claims. *McCleskey v. Zant*, 499 U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

For the foregoing reasons, we affirm the district court.

AFFIRMED.

---

5. Burger also claims that his counsel's inexperience mandates this claim's consideration. We agree with the district court that "[t]hese reasons do not persuade the court. No right to post-conviction counsel that has been practicing law several years. Further, not only is the state not precluded from 'hurrying' collateral review, but the state actually has a great and legitimate interest in 'prompt finality of conviction and execution of sentence.' *Presnell v. Kemp*, 835 F.2d 1567, 1573 (11th Cir.1988)."

6. Burger gives three reasons which demonstrate how the ends of justice require this court to address appellant's due process *Ake* claim on the merits: (1) the totality of the circumstances under which the first petition was filed; (2) *Ake* constitutes an intervening change in the law; and (3) the state's conduct in addressing Burger's post-conviction proceedings.